UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                              :

HECTOR VARGAS,                          :
                                              : **ORDER GRANTING**
              Plaintiff,         : **DEFENDANTS' MOTION**
                                              : **FOR SUMMARY**
   -against-                  : **JUDGMENT**
                                            :
                                              : 08 Civ. 9254 (AKH)

MANHATTAN and BRONX SURFACE TRANSIT  :
OPERATING AUTHORITY (MABSTOA) and      :
NEW YORK CITY TRANSIT AUTHORITY          :
(NYCTA),                                              :
                                              :
              Defendants.        :
                                              :
------------------------------------------------------------------ x
ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff Hector Vargas, proceeding *pro se*, alleges that Defendants Manhattan and Bronx Surface Transportation Authority ("MABSTOA") and the New York City Transit Authority discriminated against him because of his age and disability, and deprived him of certain constitutional rights during the course of disciplinary proceedings. Defendants move for summary judgment. For the reasons stated below, Defendants' motion is granted.

## I.    FACTS

        The New York City Transit Authority is a public benefit corporation created by the State of New York to operate trains and buses in New York City. N.Y. Pub. Auth. Law § 1201. MABSTOA, a statutory subsidiary of the New York City Transit Authority, is a legally distinct public benefit corporation created to operate bus lines in Manhattan and the Bronx. Id. § 1203-a(3)(b). Employees of MABSTOA are not employees of the New York City Transit

1

Authority. Id. The Transit Workers Union, the New York City Transit Authority, and MABSTOA are governed by the same Collective Bargaining Agreement.

Hector Vargas, age 61 when he filed this action, was hired by MABSTOA in March 1997 as a bus driver. In 2003, Vargas was reassigned to MABSTOA's Department of Security as a Transit Property Protection Agent ("Protection Agent"). Vargas currently holds this position. A Protection Agent is required to monitor access to and from MABSTOA and New York City Transit Authority properties; ensure that gates to the properties are secured; register employees, visitors, and vehicles entering the properties; report security and safety threats; and respond to certain directives. Protection Agents are required to maintain a logbook at each post to record the various times that they enter and leave that post. The logbook must remain at the post at all times. Protection Agents are supervised by Transit Property Protection Supervisors ("Supervisors").

Vargas claims that, when the underlying events took place, he was the oldest Protection Agent at the Manhattanville Bus Depot, the location he was assigned to work. On July 10, 2007, Vargas was working a shift from midnight to 8:00 a.m. at a guard booth known as "Post 76B." The logbook for Post 76B shows that Vargas left his post at 6:04 a.m. for a "comfort relief," the term used to refer to a bathroom break.[1] Under standard procedure, while Vargas was gone, the Protection Agent assigned to Post 76C left his guard booth and covered Vargas's post.

---

[1] "A comfort relief is an occasion when the [Protection Agent] is allowed to be absent from his/her assigned duties and responsibilities for a brief period of time in order to use the nearest restroom." Department of Security Standard Operating Procedure § 3.0. "The [Protection Agent] should therefore use comfort relief time for its intended purpose and NOT to conduct personal business away from the post. Comfort relief should be for a reasonable length of time to permit travel to/from bathroom facilities." Id. §§ 2.0, 3.0 (emphasis in original).

2

While Vargas was on his comfort relief, Supervisor Clare Fowler arrived at the Manhattanville Bus Depot. Supervisor Fowler signed into the 76B logbook at 6:33 a.m. and learned that Vargas was on a comfort relief. Supervisor Fowler proceeded inside the bus depot and found Vargas sitting on a couch in "the swing room," a break area with couches and a television intended to be used by bus operators while on break. The television was on and it appeared to Fowler that Vargas was watching it. Vargas admits that he was sitting on the couch, but contends that he was speaking with a union representative about union matters, not watching television.

Supervisor Fowler instructed Vargas to return to his post. Vargas claims that Fowler also took a picture of him sitting on the couch, though Fowler disputes this. Fowler left the swing room and returned a few minutes later to find that Vargas remained on the couch. Fowler then proceeded to Vargas's post and waited for him to return. Fowler notified her supervisor, Xavier Ruiz, of Vargas's behavior. Ruiz instructed Fowler to hold Vargas "out of service"[2] and to have him write a statement. The logbook shows that Vargas returned to his post at 6:53 a.m., forty-nine minutes after signing out for his comfort relief. Vargas contends that the length of his comfort relief was appropriate "due to the circumstances of his needs."

On returning to his post, Fowler instructed Vargas to hand over his badge and pass. Vargas refused, and Fowler advised Vargas that she would add a charge of insubordination if he failed to hand over the requested documents. Fowler again relayed Vargas's behavior to Ruiz, and Ruiz instructed Fowler to tell Vargas not to leave his post until Ruiz arrived. Fowler

---

[2]   A Protection Agent is "held out of service" for a serious violation by asking the Protection Agent to surrender his badge and pass and to submit a written statement. The Protection Agent is also instructed to leave the property and return the next day for a hearing with management.

3

relayed Ruiz's message and, in response, Vargas removed the logbook from his post and left the area.

Xavier Ruiz arrived at the Manhattanville Bus Depot at approximately 8:15 a.m. When Vargas returned to Post 76B, Ruiz requested the logbook and Vargas's badge and pass. Vargas handed over the logbook, but not his badge or pass. Vargas claims that he did not submit his badge or pass because he did not have them in his possession at the time. Ruiz instructed Vargas to leave the property and advised him of the time, date, and location of a disciplinary hearing for the events of that morning.

Pursuant to standard operating procedure, the Deputy Chief of the Department of Security reviewed the reports prepared by Fowler and Ruiz, and requested the Office of Labor Relations to initiate a disciplinary proceeding against Vargas. Vargas was charged in the disciplinary action with being away from his assigned post while watching television, failure to comply with direct orders, gross insubordination, being discourteous to supervisors, failure to perform duties, removing the logbook from his post without permission, improper use of a comfort relief, dereliction of duty, and conduct unbecoming a Transit employee.

Under the Collective Bargaining Agreement, the New York City Transit Authority and MABSTOA follow a progressive disciplinary policy for rules violations. Penalties run from a warning or reprimand for a minor violation, to a suspension or dismissal for a more serious infraction. Disciplinary disputes are subject to a multi-step grievance procedure. The first step is the preparation of charges against the employee. The employee may challenge those charges at a Step I hearing, which is held before a Step I hearing officer. The employee is entitled to representation by a union representative and may testify on his own behalf. The employee may accept the Step I hearing officer's recommended penalty or request a Step II

hearing, the next phase of the disciplinary process.  The Step II hearing officer has the discretion to sustain or dismiss the charges, and to sustain, dismiss, or modify the penalty.  At the Step II hearing, the New York City Transit Authority is usually represented by the Director of Labor Relations, or a designee, and the employee is usually represented by a union representative.  The final stage is binding arbitration before an impartial arbitrator.  For serious offenses, like those Vargas is charged with, the penalty can be imposed before the hearing process has been completed.  The parties may settle a disciplinary grievance at any time during the disciplinary process.  When the parties settle, they typically enter a written Stipulation and Agreement.  The Stipulation and Agreement memorializes the terms of the agreement, the penalty, and the disciplinary actions covered by the settlement.

    Vargas's Step I hearing was held on July 11, 2007 before Step I hearing officer Ralph Misiti.  Vargas was accompanied by a union representative, Bill Seff.  Misiti real aloud the reports prepared by Fowler and Ruiz, and the Disciplinary Action Notification, which summarized the charges against Vargas, and included the recommended penalty of dismissal.  Vargas contends that, before the hearing began, Misiti said: "Mr. Vargas, before we begin, you are dismissed."  Defendants deny that this statement was made.   At the hearing, Vargas denied that he was ever asked for his badge or pass, and stated that, due to his diabetes, he needed to take an extended comfort relief to rest before returning to his post, and that Supervisor Fowler treated him disrespectfully.  Misiti sustained the charges and the recommended penalties.  Vargas appealed that decision.  The Step II hearing was held on July 16, 2007, and Vargas was again accompanied by Bill Seff, the union representative.  The Step II hearing officer sustained the charges and the penalty of dismissal.  Vargas appealed that decision.

Before any action was taken on his appeal to the neutral arbitrator, Vargas and MABSTOA reached an agreement and settled the dispute. The parties agreed that the penalty would be reduced from a dismissal to a five-day suspension. The agreement was memorialized in a one-page Stipulation and Agreement, dated July 16, 2007, that releases the "Transit Authority from any and all claims, whether at law[,] in equity[,] or arising by virtue of contract which they may have or which they have had heretofore in connection with [the] underlying dispute." The Stipulation and Agreement is "by and between the Transit Authority and Transport Workers Union, Local 100 on behalf of . . . Hector Vargas."

On October 7, 2007, Vargas commenced this action in New York State Supreme Court. Defendants subsequently removed the action to this Court on the grounds that the action presented a federal question. 28 U.S.C. § 1441. The complaint sets forth two causes of action. The first alleges age discrimination in violation of the New York State Human Rights Law. N.Y. Exec. Law § 296(a). The second alleges breach of contract. Viewing his complaint liberally "to raise the strongest arguments that they suggest," Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994), Vargas also alleges causes of action for violation of his procedural due process rights and equal protection guarantee under the state and federal constitution.

## II.     STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" of "material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary

judgment." Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008).  However, "[m]ere speculation and conjecture is insufficient to preclude the granting of the motion."  Harlen Assocs. v. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

### III.   DISCUSSION

#### A.  Employment Discrimination Claims

Plaintiff brings his employment discrimination claims pursuant to § 296 of the New York Human Rights Law.[3]  Vargas claims that the disciplinary charges brought against him demonstrate Defendants' age-based discrimination.  He also claims that "[t]he gravamen of [his argument] is based not on the act of a single actor on behalf of the defendants, but rather . . . there has been a custom and distinct discriminating policy over a period of years . . . to discriminate against [Protection Agents] . . . who are advanced in age."  Plaintiff's Affirmation in Opposition to Summary Judgment Motion (hereinafter, "Aff. in Opp'n") ¶ 12 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).

Claims for employment discrimination brought under the New York Human Rights Law follow the three-step burden-shifting scheme applicable to Title VII claims. Chambers-English v. Unisys Corp., 05 Civ. 2976 (DC), 2007 U.S. Dist. LEXIS 8846 (S.D.N.Y. Jan. 31, 2007), aff'd, 300 Fed. App'x 61 (2d Cir. 2008); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1972).  While the burden of production shifts between the parties, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

---

[3]   Section 296(a) provides that "[i]t shall be an unlawful discriminatory practice: (a) [f]or an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status , or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

against the plaintiff remains at all times with the plaintiff." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

The burden of production rests with Vargas to prove by a preponderance of the evidence a prima facie case of discrimination. Id. at 506; Bickerstaff v. Vassar Coll., 196 F.3d 435, 446 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000). To establish a *prima facie* case of age discrimination, Vargas must establish that: "(1) he was within the protected age group; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." Terry v. Ashcroft, 336 F.3d 128, 138-39 (2d Cir. 2003). If Vargas makes out a *prima facie* case, the burden of production then shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996). If Defendants satisfy their burden, the burden shifts back to Vargas to demonstrate that the reasons proffered are merely pretext for discrimination. Hicks, 509 U.S. at 507-08.

Here, Vargas's claim for employment discrimination fails because he cannot articulate a prima facie case of discrimination. Vargas can establish that he is within a protected class since he is over forty years old, that he is qualified for his position, and that he was subjected to an adverse employment action. See Terry, 336 F.3d at 138-39. However, his claim fails because he has not established that "the adverse employment action occurred under circumstances giving rise to an inference of discrimination." See id. In his complaint, Vargas alleged that he was the oldest Protection Agent at the Manhattanville Bus Depot and was "the only one harassed and mistreated by [m]anagement [p]ersonnel and its supervisory employees at [the Manhattanville Bus Depot]." Complaint ¶ 20. He also alleges that his "age was the

8

motivating factor in the discrimination intimidation and harassment" he allegedly suffered. Id. at ¶ 21. Vargas contends that MABSTOA management wanted to "ruin[ ] and blemish[ ]" his "spotless employment record" in order to "place its younger bus[ ] operators in [the Protection Agent] position while they recover from minor injuries." Aff. in Opp'n ¶ 8. He also contends that "over the years there has been a custom and distinct discriminating policy" by Defendants against Protection Agents who are "advanced in age." Id. ¶ 12. Lastly, as additional evidence to support his claim of age discrimination, Vargas claims that Defendants required Plaintiff to submit to a medical exam to determine whether he had a medical need for an extended comfort relief. Id. ¶¶ 13-14.

To determine whether a genuine issue of disputed material fact exists, courts must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." Bickerstaff, 196 F.3d at 448. Vargas's conclusory assertions are insufficient to establish an inference of discrimination that can satisfy the fourth prong of the *prima facie* requirement. Id. at 448; Quiroz v. U.S. Postal Service, 00 Civ. 9772 (DAB), 2008 U.S. Dist. LEXIS 11305 at *16-17 (S.D.N.Y. Feb. 8, 2008) (holding that plaintiff could not establish inference of discrimination where he "testified that he could not recall [the decision-maker] making any comments about [p]laintiff's" protected status and offered no other relevant admissible evidence). That Vargas was the oldest Protection Agent at the Manhattanville Bus Depot does not support an inference of discrimination. Despite his allegation of suffering years of discrimination,[4] Plaintiff fails to identify a single discriminatory

---

[4] To the extent Vargas has stated a claim for hostile work environment, that claim would also be dismissed. To prevail on hostile work environment claim, Vargas must show "the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) (internal quotations omitted). His conclusory statements notwithstanding, Vargas fails to

statement or act that was based on his protected status.  See Quiroz, 2008 U.S. Dist. LEXIS 11305, at *16-17.  He does not carry his burden of establishing that his suspension "occurred under circumstances giving rise to an inference of discrimination."  Terry, 336 F.3d at 138-39.

In his opposition to Defendants' motion for summary judgment, Vargas alleges that Defendants engaged in "age discrimination due to medical disability."  Aff. in Opp'n  8. Viewing the complaint liberally to assert a cause of action for disability discrimination,[5] Plaintiff's claim must fail because he cannot articulate a prima facie case of disability discrimination.  The Americans with Disabilities Act provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  When reviewing claims under the ADA, courts apply the McDonnell-Douglas burden-shifting analysis.  411 U.S. at 802; Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006).  At the first stage, then, Vargas bears the burden of establishing a *prima facie* case. In order to establish a *prima facie* case of discrimination under the ADA, Vargas must show that (1) Defendants are subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job; and (4) he suffered some adverse employment action because of his disability.  Heyman v. Queens Village Committee for Mental Health, 198 F.3d 68, 72 (2d Cir. 1999).

---

show a single act of age-based discrimination.  Accordingly, he has not shown that he was subjected to "harassment that was sufficiently severe or pervasive to alter the conditions [his] employment."  Id.

[5]     Though Vargas does not mention a disability in his complaint, he apparently explains the need for an extended comfort relief because of "the circumstances of his needs."

Vargas has failed to establish a *prima facie* case of disability discrimination. Though Vargas asserts that he has diabetes, he does not offer any evidence, other than his own assertion, that he in fact does have diabetes, or that he required more time for a comfort relief because of it. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) ("Though we must accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor, conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.").

### B. Breach of Contract Claims

Vargas also asserts a cause of action for breach of contract. He alleges that Defendants breached their obligation under the Collective Bargaining Agreement to "respect its employees." Complaint ¶ 31. Viewing his complaint liberally, Vargas may also be asserting a claim for breach of contract for Defendants' alleged failure to follow the grievance procedure established under the Collective Bargaining Agreement. Complaint ¶ 27.

Certain of Vargas's claims are barred by the waiver he signed. The Stipulation and Agreement specifically states that the "Grievant [Vargas] and the Union jointly and severally hereby release the Transit Authority from any and all claims . . . by virtue of the [Collective Bargaining Agreement] . . . in connection with the underlying dispute." Vargas contends that he executed the waiver without knowing that he "was required to go to medical for Diabetic-Extended comfort and had been predisciplinary suspended." Aff. in Opp'n ¶ 14. He contends that, had he known he was required to fulfill this "discriminatory requirement" of getting a physician's permission "for a Diabetic caused need of extended comfort," then "as a matter of principal" he would not have accepted "a mere 5 days suspension." Aff. in Opp'n ¶ 15.

Whether the waiver is binding is evaluated according to the totality of the

11

circumstances, and all factors need not be satisfied in order to find a release enforceable. Bormann v. AT&T Communications, Inc., 875 F.2d 399, 403 (2d Cir. 1989). Among the factors that courts consider particularly relevant are the plaintiff's education and experience, the amount of time the plaintiff was given to review the waiver, the plaintiff's role in negotiating the waiver, the clarity of the waiver, whether the plaintiff was represented by an attorney, and whether the consideration given in exchange for the release exceeds employee benefits to which the plaintiff was already entitled. Id. In Kwok v. New York City Transit Authority, the district court found that a one-page stipulation and agreement, which included the same operative language as the waiver that Vargas signed, was binding and precluded the employee's claims against the Transit Authority for actions arising out of the underlying disciplinary dispute. No. 99 Civ. 2281, 2001 U.S. Dist. LEXIS 10370, at *12-13 (S.D.N.Y. July 20, 2001). The court found that the stipulation and agreement was "clear and unambiguous," was "one page in length," and that the employee had an opportunity to review the document with the assistance of a union representative and a union attorney. Id. at *15-16. The court also noted that the employee "exercised his free will" by choosing to sign the waiver to avoid "potential termination" to receive a "more attractive option, which was to sign an agreement guaranteeing his employment." Id. at *13-14.

Here, like Kwok, the Stipulation and Agreement constitutes a binding waiver of Vargas's right to sue for "any and all claims . . . by virtue of the [Collective Bargaining Agreement] . . . in connection with the underlying dispute." The Stipulation and Agreement is one page long and does not include any ambiguous terms. Though Vargas was not represented by an attorney, he was assisted by a union representative at each stage of the grievance procedure, including when he ultimately signed the waiver. Vargas received consideration for executing the waiver—namely, a reduction in his punishment from dismissal to a five-day suspension.

12

Moreover, Plaintiff explains that he accepted the five-day suspension, instead of risking the chance that the arbitrator would order his dismissal, so that he could "fight this injustice . . . from the inside" of MABSTOA. Aff. in Opp'n ¶ 10. Based on the totality of the circumstances, I conclude that the Stipulation and Agreement is binding, and therefore bars Vargas's claim for breach of contract. Bormann, 875 F.2d at 403; Kwok, 2001 U.S. Dist. LEXIS 10370, at *15-16.

Moreover, even assuming the waiver is not effective, and that Defendants did in fact breach the Collective Bargaining Agreement, Vargas would not have a claim against Defendants because of that breach. The Collective Bargaining Agreement was signed between Defendants and Vargas's labor union—Vargas is not a party to that contract. "Where an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement may not sue the employer directly for breach of that agreement but must proceed in accordance with the contract." Spencer v. City of New York, 06 Civ. 2852 (KMW), 2007 U.S. Dist. LEXIS 39101, at *9 (S.D.N.Y. May 29, 2007) (quoting Neiman v. Kingsborough Cmty. Coll., 146 A.D.2d 612, 613 (2d Dep't 1989). Accordingly, if Vargas wants to pursue his breach of contract claim, he must do so through the Collective Bargaining Agreement's grievance procedure, or argue that an exception applies that would permit him to avoid the strictures of this general rule.[6] A cause of action in this Court is not the appropriate venue for Vargas to object to the manner in which MABSTOA treated him.

---

[6] There are two exceptions to this general rule. An employee will not be required to pursue the collective bargaining agreement's grievance procedure "where the union, . . . by refusing to process the grievance, breaches its duty to the employee of providing him or her with fair representation." Neiman, 146 A.D.2d at 613. An employer will also be relieved of his duty to pursue the grievance procedure where the employer's conduct "repudiates the grievance procedures provided for in the agreement." Id. Nothing in Vargas's complaint or his supporting papers indicate that either exception might apply.

13

### C. Constitutional Claims

Construing the complaint liberally, Vargas also asserts claims for constitutional violations. Vargas claims that, under the Collective Bargaining Agreement, disciplinary disputes are supposed to move through the defined hearing process. However, he contends that Ralph Misiti, the Step I hearing officer, stated, before the Step I hearing: "Before we begin, Mr. Vargas, you are dismissed." Aff. in Opp'n ¶ 11(a). It appears that Vargas believes this statement violated his due process rights under the New York and United States Constitutions because it shows that Defendants terminated his employment before the Step I hearing was conducted. Aff. in Opp'n ¶ 10. Vargas also claims that his equal protection rights were violated.

To determine if a plaintiff has been deprived of a property interest without due process of law in violation of the Fourteenth Amendment's due process guarantee, the Court must identify a constitutionally protected property interest and then determine whether the plaintiff received constitutionally adequate process in the course of the deprivation of that interest. See, e.g., Harhay v. Town of Ellington Board of Education, 323 F.3d 206, 212 (2d Cir. 2003).

Vargas's claim for a due process violation fails because he has not established that he has a protectable property interest. Vargas is an employee of MABSTOA, not the New York City Transit Authority. N.Y. Pub. Auth. Law § 1203-a(3)(b) (MABSTOA employees "shall not become, for any purpose, employees of the city or of the transit authority and shall not acquire civil service status"); Collins v. Manhattan & Bronx Surface Transit Operating Authority, 62 N.Y.2d 361, 365 (1984). As an employee of MABSTOA, Vargas may be "terminated at any time, without a hearing and without reasons being stated, unless doing so would be violative of some other provision of the Constitution, a statute other than the Civil Service Law, or the provisions of a collective bargaining agreement." Bergamini v. Manhattan & Bronx Surface Transit Operating

Authority, 62 N.Y.2d 897, 899 (1984). Thus, to evaluate Vargas's claim, the Court must look to the Collective Bargaining Agreement.

Under the Collective Bargaining Agreement, disciplinary charges against union members are governed by the grievance process. That process entitles Vargas to, *inter alia*, a Step I hearing, an appeal to a Step II hearing, and, ultimately, binding arbitration. Despite the disputed statement that Vargas was told that he was "dismissed" before the Step I hearing began, it is undisputed that Vargas received a full Step I hearing, that he then appealed the hearing officer's decision, and then received a full Step II hearing, and appealed the decision of that hearing officer. It is also undisputed that prior to commencing binding arbitration, Vargas, his union, and Defendants settled their dispute and executed the Stipulation and Agreement that reduced the recommended penalty against Vargas from a dismissal to a five-day suspension, and released the Defendants from any "any and all claims . . . arising by virtue of [the Collective Bargaining Agreement] . . . in connection with [the] underlying dispute." Vargas received all of the procedural protections provided for in the Collective Bargaining Agreement.

Vargas also claims that Defendants' actions violated his right to equal protection under the law. Vargas raises this claim for the first time in his Affirmation in Opposition to Defendants' motion for summary judgment. Even if Plaintiff properly asserted this as a claim for relief, the claim would be dismissed. To assert a claim under the Equal Protection Clause, a plaintiff must allege that he has been treated differently from others similarly situated and that there is no rational basis for such difference in treatment. See Romer v. Evans, 517 U.S. 620, 632-33 (1996). Vargas has failed to establish that he was treated differently than any other group. Accordingly, this claim must fail.

## IV.   CONCLUSION

For the reasons stated, Defendants' motion for summary judgment is granted.

The Clerk shall mark the motion (Doc. No. 10) as terminated and the case as closed.

SO ORDERED.

Dated: April 30, 2010
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge